IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

**WEDGEWOOD-FOUNTAIN, INC.,**

            **Plaintiff,**                    **Case No.: 10-CA000729**

**vs.**

**ALLSTATE INSURANCE COMPANY,**

            **Defendant.**

_____/

### AMENDED COMPLAINT FOR BREACH OF CONTRACT
### AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, WEDGEWOOD-FOUNTAIN, INC. ("WEDGEWOOD

FOUNTAIN"), by and through its undersigned attorney, and hereby files this Amended

Complaint and Demand for Jury Trial against the Defendant, ALLSTATE INSURANCE

COMPANY ("ALLSTATE"), and as grounds therefore, states as follows:

### GENERAL ALLEGATIONS

1.     This is an action for damages in excess of Fifteen Thousand and No/100

Dollars ($15,000.00) exclusive of pre-judgment interest, court costs, and attorney's fees.

2.     At all times relevant hereto, WEDGEWOOD FOUNTAIN was and is a

Florida Non Profit Corporation operating as a condominium association consisting of

thirty (30) separate buildings located as listed on a "Supplemental Declarations" form

no. BU5575-3 (see attached composite Exhibit "A") with a mailing address of 13550

Worthington Way, Bonita Springs, Lee County, Florida.

3.     Upon information and belief, at all times relevant hereto, ALLSTATE is

and was a Foreign Profit Corporation doing business in the State of Florida.

4.    Upon information and belief, ALLSTATE is an insurance company authorized to engage in the business of insurance with Florida Citizens.

5.    ALLSTATE, while engaging in the business of insurance in the State of Florida, is required to follow and/or comply with all Florida Insurance Code Statutes and regulations promulgated by the legislature and the Florida Department of Financial Services.

6.    In consideration of the premium paid to it by WEDGEWOOD FOUNTAIN, ALLSTATE issued to WEDGEWOOD FOUNTAIN in Bonita Springs, Lee County, Florida, a replacement cost Commercial Customizer Policy, Policy No. 049 809983 ("The Policy"), which was in full force and effect (effective February 1, 2005, through February 1, 2006) at the time damage occurred as a result of hurricane and/or hurricane force winds, and ensuing damages to the insured premises located at 13550 Worthington Way, Bonita Springs, Lee County, Florida, on or about October 24, 2005. A purported certified copy of The Policy is attached as composite Exhibit "A."

7.    A claim was timely reported to ALLSTATE as a result of the loss and damage.

8.    Upon the notification of the claim, ALLSTATE never voluntarily provided WEDGEWOOD FOUNTAIN with a copy, certified or otherwise, of The Policy, nor questioned as to whether WEDGEWOOD FOUNTAIN had a complete copy of The Policy.   Nonetheless, ALLSTATE kept demanding that WEDGEWOOD FOUNTAIN comply with terms and conditions of The Policy, even though it knew or should have known that WEDGEWOOD FOUNTAIN did not have a complete copy of The Policy to

2

know what terms and conditions of The Policy it had to comply with to receive payment of owed insurance benefits.

9.      ALLSTATE failed to timely provide WEDGEWOOD FOUNTAIN with a copy of The Policy, certified or otherwise, even after multiple requests were made by WEDGEWOOD FOUNTAIN'S representatives until on or about October 29, 2008. (See attached composite Exhibit "A").  This prohibited WEDGEWOOD FOUNTAIN from being able to timely understand and value its total damages.

10.     ALLSTATE has insured this risk since 1998, and The Policy was rewritten from an insurance policy ALLSTATE had issued since 1992. (See attached composite Exhibit "B").

A.      Prior to October 24, 2005, ALLSTATE had inspected the insured property multiple times. (See attached composite Exhibit "B").

B.      As of March 9, 2004, after thoroughly inspecting the insured property in detail, ALLSTATE opined that there were no "exterior features in need of repair" on any of the insured buildings. (See attached composite Exhibit "B").

C.      As of March 9, 2004, after thoroughly inspecting the insured property in detail, ALLSTATE opined that it found no "exterior maintenance inadequa[cies]" in regard to any of the insured buildings.  (See attached composite Exhibit "B").

D.      As of March 9, 2004, after thoroughly inspecting the insured property in detail, ALLSTATE opined that it found no "[i]nterior maintenance

inadequa[cies]" in regard to any of the insured buildings.  (See attached composite Exhibit "B").

       E.    As of March 9, 2004, after thoroughly inspecting the insured property in detail, ALLSTATE opined that it found no "[i]nterior housekeeping inadequa[cies]" in regard to any of the insured buildings.  (See attached composite Exhibit "B").

       F.    As of March 9, 2004, after thoroughly inspecting the insured property in detail, ALLSTATE opined that it found no "unusual windstorm features or exposures" in regard to any of the insured buildings.  (See attached composite Exhibit "B").

       G.    As of March 9, 2004, after thoroughly inspecting the insured property in detail, ALLSTATE opined that it found no "settling or cracking of the structure(s)" in regard to any of the insured buildings.  (See attached composite Exhibit "B").

       H.    As of March 9, 2004, after thoroughly inspecting the insured property in detail, ALLSTATE reported that the age of the insured buildings roofs were only eleven (11) years old. (See attached composite Exhibit "B").

       I.    As of March 9, 2004, after thoroughly inspecting the insured property in detail, ALLSTATE reported that "[n]o mold was seen in units viewed" in regard to any of the insured buildings. (See attached composite Exhibit "B").

       J.    As of March 9, 2004, after thoroughly inspecting the insured property in detail, ALLSTATE reported that "[a]ll wiring and plumbing appear to be in

4

good condition" in regard to any of the insured buildings.  (See attached composite Exhibit "B").

        K.     It is undisputed that ALLSTATE had full knowledge of the risk,  and any of WEDGEWOOD FOUNTAIN'S, pre-existing condition(s) and damage(s), if any, after photographing and thoroughly inspecting the insured property, and as such ALLSTATE with knowledge underwrote and competently evaluated the insured risk before agreeing to accept the risk for coverage.  (See attached composite Exhibit "B").

        11.     Hurricane and hurricane force winds are covered perils under The Policy.

        12.     Damages caused by hurricane and/or hurricane force winds, and ensuing damages as a direct result thereof, are covered damages under The Policy.

        13.     WEDGEWOOD FOUNTAIN never prohibited ALLSTATE from conducting any inspections of the insured property after the insurance claim had been submitted. Multiple inspections were completed by ALLSTATE during its claim investigation.

        14.     ALLSTATE allegedly inspected all thirty (30) separate insured buildings after the loss was reported and allegedly fully investigated the complete extent and nature of the damages wherein it opined the damages were only $36,945.79, tendering only $29,151.84.  (See attached composite Exhibit "C").  This figure was far below the amount of insured loss and damage that WEDGEWOOD FOUNTAIN believed to exist. Only the "amount of loss" was at issue, and never did ALLSTATE assert any Coverage issues.

        15.     ALLSTATE'S under-estimate of the damages and refusal to tender additionally owed insurance benefits was a wrongful denial of the claim.

16.     Thereafter, ALLSTATE not only contended no further investigation or documents were needed, but that it owed no further insurance benefits; over WEDGEWOOD FOUNTAIN'S objection, ALLSTATE closed its file.

17.     WEDGEWOOD FOUNTAIN retained an insurance claim damage expert to assist in investigating the true full extent and nature of its total damages, both covered and uncovered.

18.     On or about August 5, 2008, because the Parties were in dispute as to the "amount of loss," WEDGEWOOD FOUNTAIN demanded appraisal in an attempt to amicably resolve the insurance claim.  (See attached Exhibit "D").

19.     On August 25, 2008, less than 20 days later, ALLSTATE retained attorneys to assist in investigating the loss, adjusting the loss, demanding a sworn statement in proof of loss be filed, reviewing the sworn statement in proof of loss, and taking Examinations Under Oath ("EUO"); and at all times rejected the appraisal process to resolve the insurance claim.  (See attached Exhibit "E").

A.     Additionally, on August 25, 2008, ALLSTATE, through attorneys, sent a second letter unilaterally scheduling an EUO without first coordinating a mutually agreeable date with the insured.  (See attached composite Exhibit "F")

B.     Neither ALLSTATE nor the attorneys retained the proper experts to begin evaluating the true extent and nature of the damages at this time.  Moreover, it was not until mid to late 2009 that structural engineers were retained.  (See attached composite Exhibit "G").

C.     ALLSTATE retained attorneys to conduct an outcome-oriented claim investigation of the loss.

D.     ALLSTATE, through attorneys, took an adversarial approach to the adjustment of the insurance claim to conduct an outcome-oriented investigation of the loss. (See attached composite Exhibit "H").

E.     ALLSTATE knew or should have known that demanding a sworn statement in proof of loss after denial of further Coverage was a misrepresentation. When an insurer denies liability during the period prescribed for the presentation of proof of loss on grounds not relating to the proof of loss, such denial will ordinarily be considered as a waiver of the provisions of the policy requiring the filing of a proof of loss. *Keel v. Independent Life & Acc. Ins. Co.*, 99 So. 2d 225 (Fla. 1957). The reason for the rule is simply that the law will not require the doing of a useless thing. When the insurer denies in advance that it has any liability under the policy coverage, the formal filing of a proof of loss becomes, in the eyes of the law, futile and unnecessary that would accomplish nothing.

20.     WEDGEWOOD FOUNTAIN has provided ALLSTATE with all requested relevant and material documents and information in its possession and control needed for ALLSTATE to tender insurance benefits owed; as well as permitted ALLSTATE to conduct multiple EUO'S (November 21, 2008, EUO of Jim Gelhaar; and March 23, 2009, of Gordon Sheahen) of designated representatives of WEDGEWOOD FOUNTAIN. (See for example, attached Composite Exhibit "I," letters/emails dated February 29, 2009, March 20, 2009, October 20, 2009, October 23, 2009, November 9-

11, 2009, November 4, 2009, and November 11, 2009).  WEDGEWOOD FOUNTAIN begged ALLSTATE to make a decision by paying the undisputed insurance benefits owed, agreeing to appraisal on the covered amount of damages in dispute, or deny the claim.  (See attached Composite Exhibit "I").

21.     On October 21, 2008, WEDGEWOOD FOUNTAIN submitted an initial and partial Sworn Statement in Proof of Loss for "Building Damages" for an undetermined amount, but subsequently submitted on November 19, 2008, an initial and partial Sworn Statement in Proof of Loss for "Building Damages" for the amount of $4,195,900.88; and then on February 26, 2009, submitted a third updated initial and partial Sworn Statement in Proof of Loss for "Building Damages" for $3,820,559.87.  (See attached composite Exhibit "J").

A.     ALLSTATE'S tendering of $29,151.84 in undisputed insurance benefits to WEDGEWOOD FOUNTAIN without the demand for a sworn statement in proof of loss be submitted, waived its right to demand thereafter WEDGEWOOD FOUNTAIN submit a sworn statement in proof of loss before additional payments would be made.

B.     When ALLSTATE admits liability in an unagreed amount ($29,151.84) to WEDGEWOOD FOUNTAIN, formal proof of loss is thereby waived. *Llerena v. Lumbermens Mut. Casualty Co.*, 379 So. 2d 166 (Fla. 3rd DCA 1980); see also, *Bear v. New Jersey Ins. Co.*, 189 So. 252 (Fla. 1939).

C.     WEDGEWOOD FOUNTAIN did not waive a waiver of proof of loss by thereafter actually furnishing a proof of loss.  *Employers' Liability Assurance Corp. v.*

8

*Royals Farm Supply, Inc.*, 186 So. 2d 317  (Fla. 2nd DCA 1966); *American Bankers Ins.*

*Co. v. Terry*, 277 So. 2d 563 (Fla. 3rd DCA 1973).

22.    The Policy states in pertinent part:

### AMENDATORY ENDORSEMENT FOR CUSTOMIZER POLICIES
### (FLORIDA)

* * *

#### Our Payment of Loss

Provided you have complied with all the terms of this Policy, we will pay for covered loss or damage:

A.    Within twenty (20) days after we receive the sworn statement of loss and reach written agreement with you; or

B.    Within thirty (30) days after we receive the sworn statement of loss and;

1.    There is an entry of a final judgment; or
2.    There is a filing of an appraisal award with us.

(See attached Exhibit "A," form no. BU5641-6, page 2 of 3).

Under The Policy, ALLSTATE was to tender insurance benefits within twenty (20) days of receiving the executed Sworn Statement in Proof of Loss or no later than November 17, 2008, December 9, 2008, and then March 18, 2009.  ALLSTATE never tendered any owed insurance benefits, undisputed or otherwise.

23.    The Policy states in pertinent part:

### CONDOMINIUM ENDORSEMENT

* * *

7.    **Loss Payable Clause**  The Loss Payable Clause Condition under Coverage A is amended to include:

> If an insurance trustee has been designated by you, loss will be adjusted with you, but will be payable to the designated insurance trustee. Payment of loss to the insurance trustee is a complete discharge of our liability under this policy for the loss.

(See attached Exhibit "A," form no. BU5552, page 2 of 3).  In violation of The Policy's terms and conditions ALLSTATE refused to "Adjust the Loss" with WEDGEWOOD FOUNTAIN.

24.    On November 19, 2009, ALLSTATE, wrongfully denied Coverage for the insurance claim on the following four (4) grounds:

A.    "The insured has failed to provide prompt or timely notice to Allstate of its supplemental claim, which prejudiced Allstate, contrary to the express terms and conditions of the insurance policy."   (See attached Exhibit "K").   This was a misrepresentation and wrongful denial of Coverage.

B.    "A forensic inspection and evaluation of the claimed damage or condition of the roofs at Wedgewood Fountain reveals that the existing conditions of the roofs are not related to Hurricane Wilma or any windstorm event. . . . but are in fact related to age, normal wear, and the expected deterioration of the roof covering, and/or related to defects or deficiencies in the initial roof tile installation and/or deficiencies in the subsequent repairs to the roofs that pre-existed the windstorm in October 2005, or made subsequent to October 2005. . . . [and] the forensic inspection and evaluation has indentified foot traffic on the roofs as the likely cause of broken or cracked roof tiles." (See attached Exhibit "K").   This was a misrepresentation and wrongful denial of Coverage.

C.    "The insurer's investigation has revealed that willful misrepresentations of material fact have been made in the reporting of the claim or in the claim inquiry by Allstate." (See attached Exhibit "K"). This was a misrepresentation and wrongful denial of Coverage.

D.    "The insured's failure to fully comply with post loss conditions of the insurance policy, including but not limited to failing to produce all reasonably requested documents and records in the claims inquiry by Allstate, failure to produce records or credible evidence relating to the existing conditions of the roofs and buildings to a covered peril; and failing to take all reasonable steps to protect insured property from further damage (this includes but is not limited to not taking reasonable measures to address power washing of the roofs and adequate repairs to the buildings, which contributed to damage to roof tiles)." (See attached Exhibit "K"). This was a misrepresentation and wrongful denial of Coverage.

25.    On November 19, 2009, the same day, ALLSTATE wrongfully denied Coverage for another condominium association. Wedgewood Sherburne, on the exact same four (4) grounds as was alleged in WEDGEWOOD FOUNTAIN'S November 19, 2009, denial letter. (See attached Exhibit "L"). The denial letters are almost verbatim exactly the same, except for example the change in the names of the policyholder.

## COUNT I
## BREACH OF CONTRACT

26.    WEDGEWOOD FOUNTAIN realleges Paragraph Numbers 1 through 25 as if fully set forth herein.

11

27.   This is an action for damages for a breach of an insurance contract that was in effect at the time of the loss caused by hurricane and hurricane force winds, and for which WEDGEWOOD FOUNTAIN timely submitted a claim.

28.   In response to the claim, ALLSTATE sent and/or assigned multiple insurance adjusters, including but not limited to licensed attorneys, to act as its representatives and adjust WEDGEWOOD FOUNTAIN'S insurance claim.

29.   Once an insured files a claim it must await the insurer's investigation of the facts upon which the claim is based.

30.   An insurance company is obligated to conduct any necessary investigation in a timely fashion and to conduct a reasonable investigation before denying coverage.

31.   "Every adjuster shall adjust or investigate every claim, damage, or loss made or occurring under an insurance contract, in accordance with the terms and conditions of the contract and of the applicable laws of this state."   Fla. Stat. §626.877(2009).

32.   Hurricane and/or hurricane force winds substantially damaged the insured property which has adversely affected WEDGEWOOD FOUNTAIN causing it substantial hardship.

33.   ALLSTATE has failed and/or refused to tender insurance proceeds due and owing WEDGEWOOD FOUNTAIN with regard to losses arising out of the hurricane and/or hurricane force winds.  This was a breach of The Policy.

12

34.    WEDGEWOOD FOUNTAIN requested, on multiple times, ALLSTATE assist it in Adjusting the Loss with it, by providing it ALLSTATE'S damages estimates, expert reports or estimates, expert's opinions, scope(s) of the extent and nature of the damages both covered and uncovered, and reasons why ALLSTATE asserted that any claimed damaged were not covered, but ALLSTATE denied all such requests to cooperate in the Adjustment of the Loss. This was a breach of The Policy.

35.    ALLSTATE'S refusal to participate in appraisal was a breach of The Policy.

36.    WEDGEWOOD FOUNTAIN submitted a proper Sworn Statement in Proof of Loss, but ALLSTATE wrongfully rejected it, and failed to tender undisputed owed insurance benefits within 20 days from receipt of the sworn Proof of Loss. This was a breach of The Policy.

37.    ALLSTATE failed and/or refused to timely investigate the full and complete extent and nature of WEDGEWOOD FOUNTAIN'S covered damages. This was a breach of The Policy.

38.    WEDGEWOOD FOUNTAIN has suffered a substantial loss regarding its insured property and continues to suffer the loss.

39.    WEDGEWOOD FOUNTAIN has repeatedly requested that ALLSTATE pay its damages; ALLSTATE has failed and/or refused, and continues to refuse to pay the full damages despite knowing it is required to do so.

40.    WEDGEWOOD FOUNTAIN has done and performed all those matters and things properly required of it under The Policy, or alternatively, has been excused

from performance as a result of the acts, representations, omissions, and/or conduct of ALLSTATE.

41.    Notwithstanding the foregoing, ALLSTATE has failed and/or refused to provide full coverage under The Policy for the damages to WEDGEWOOD FOUNTAIN'S insured property and ALLSTATE has failed to promptly pay all the amounts due and has thereby breached its contract of insurance.

42.    As a direct result of ALLSTATE'S breach of its insurance contract, WEDGEWOOD FOUNTAIN has lost benefits of its insured property, and continues to suffer the loss.

43.    ALLSTATE'S wrongful denials, actions and/or omissions in the handling of WEDGEWOOD FOUNTAIN insurance claim constitutes a breach of The Policy.

44.    As a direct result of ALLSTATE'S breach of its insurance contract, WEDGEWOOD FOUNTAIN was required to become obligated for attorney fees and costs in connection with the prosecution of this action, and Florida Statute §627.428 provides for the payment of attorney fees in the event of such need.

**WHEREFORE,** the Plaintiff, WEDGEWOOD-FOUNTAIN, INC., prays this Court enter an award against Defendant, ALLSTATE INSURANCE COMPANY, of compensatory damages, consequential damages, pre-judgment interest, costs of this action, attorney fees; and such other and further relief as this Court may deem just and proper.

Further, Plaintiff requests a trial by jury on all issues so triable.

## COUNT II
## DECLARATORY JUDGMENT

45.     WEDGEWOOD FOUNTAIN realleges Paragraph No.'s 1-25 as if fully set forth herein.

46.     This is an action for Declaratory Judgment filed pursuant to Chapter 86 of the Florida Statutes.

47.     This action for declaratory judgment has been filed for the purpose of determining an actual controversy between WEDGEWOOD FOUNTAIN and ALLSTATE.

48.     WEDGEWOOD FOUNTAIN has suffered a substantial loss regarding its insured property and continues to suffer the loss.

49.     As a result of the facts set forth above, a dispute has arisen which has left the Parties hereto insecure and uncertain with respect to their rights, status or other equitable or legal responsibilities, including but not limited to:

A.     Did ALLSTATE retain attorneys in a non-legal capacity, to conduct the following:

-     Investigation as to the facts of the loss and amount of damage sustained to establish coverage, and verification if the alleged damages qualify  for coverage and benefits owed;

-     Evaluation and adjustment of the claim and determination of a fair payment in accordance with the contract; and

-     Negotiation of amounts owed based on facts discovered during the evaluation which are tantamount to adjustment.

B.    Did ALLSTATE retain attorneys in a non-legal capacity, to make statements and representations to WEDGEWOOD FOUNTAIN during the adjustment of the insurance claim which are not subject to attorney client privilege because these communications between ALLSTATE and attorneys were made in furtherance of adjustment and investigative activities;

C.    Did ALLSTATE attorneys act in a non-legal capacity or non privileged capacity, to conduct an outcome-oriented claim investigation;

D.    Did ALLSTATE retain attorneys in a non-legal capacity, to unreasonably and wrongfully refuse to "Adjust the Loss" with WEDGEWOOD FOUNTAIN, by, for example, refusing to provide WEDGEWOOD FOUNTAIN with needed information and documentation as to the extent and nature of the damages, both covered and uncovered, and expert opinions or reports, and the extent and nature of the pre-existing damages; and

E.    Does The Policy's terms and conditions of "Adjust the Loss" with WEDGEWOOD FOUNTAIN require ALLSTATE'S representatives to cooperate with its insured by producing records, documents, information, damage evaluations/reports, etc., regarding the extent and nature of the damages WEDGEWOOD FOUNTAIN?

50.    There exists a bonafide, actual, present, and practicable need for the Court to decide, as a matter of law, the above issues.

51.    There exists a present, ascertained, and ascertainable state of facts concerning the rights and obligations of WEDGEWOOD FOUNTAIN and ALLSTATE.

52.    The rights and obligations of the Parties under The Policy are dependent upon the facts and law applicable to the facts affecting coverage under The Policy.

53.    As a direct result of Defendant's actions and or omissions, WEDGEWOOD FOUNTAIN was required to become obligated for attorney's fees and costs in connection with the prosecution of this action, and Florida Statute §627.428 provides for the payment of attorney fees in the event of such need.

**WHEREFORE,** the Plaintiff, WEDGEWOOD-FOUNTAIN, INC., respectfully seeks a declaratory judgment as to whether:

A.    ALLSTATE retained attorneys in a non-legal capacity, to conduct the following:

-    Investigation as to the facts of the loss and amount of damage sustained to establish coverage, and verification if the alleged damages qualify  for coverage and benefits owed;

-    Evaluation and adjustment of the claim and determination of a fair payment in accordance with the contract; and

-    Negotiation of amounts owed based on facts discovered during the evaluation which are tantamount to adjustment.

B.    ALLSTATE retained attorneys in a non-legal capacity, to make statements and representations to WEDGEWOOD FOUNTAIN during the adjustment of the insurance claim which are not subject to attorney client privilege because these communications between ALLSTATE and attorneys were made in furtherance of adjustment and investigative activities;

17

C.     ALLSTATE attorneys acted in a non-legal capacity or non privileged capacity, to conduct an outcome-oriented claim investigation;

D.     ALLSTATE retained attorneys in a non-legal capacity, to unreasonably and wrongfully refuse to "Adjust the Loss" with WEDGEWOOD FOUNTAIN, by, for example, refusing to provide WEDGEWOOD FOUNTAIN with needed information and documentation as to the extent and nature of the damages, both covered and uncovered, and expert opinions or reports, and the extent and nature of the pre-existing damages; and

E.     The Policy's terms and conditions of "Adjust the Loss" with WEDGEWOOD FOUNTAIN require of ALLSTATE'S representatives to cooperate with its insured by producing records, documents, information, damage evaluations/reports, etc., regarding the extent and nature of the damages WEDGEWOOD FOUNTAIN.

Further, Plaintiff seeks costs of this action, attorney's fees; a trial by jury, and such other and further relief as this Court may deem just and proper.

### COUNT III
### COMMON LAW FRAUD re: INSURANCE FRAUD
### (ALLSTATE)

54.     WEDGEWOOD FOUNTAIN realleges Paragraph Numbers 1-53 as if fully set forth herein.

55.     This is an action for damages sustained by WEDGEWOOD FOUNTAIN as a result of insurance fraud committed by ALLSTATE during the adjustment of the insurance claim.

56.     Insurance fraud has been defined as:

> § 626.989. Investigation by department or Division of Insurance Fraud; compliance; immunity; confidential information; reports to division; division investigator's power of arrest
>
> (1) For the purposes of this section. a person commits a "fraudulent insurance act" if the person knowingly and with intent to defraud presents, causes to be presented, or prepares with knowledge or belief that it will be presented, to or by an insurer, self-insurer, self-insurance fund, servicing corporation, purported insurer, broker, or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of, any insurance policy, or a claim for payment or other benefit pursuant to any insurance policy, which the person knows to contain materially false information concerning any fact material thereto or if the person conceals, for the purpose of misleading another, information concerning any fact material thereto. For the purposes of this section, the term "insurer" also includes any health maintenance organization and the term "insurance policy" also includes a health maintenance organization subscriber contract.

Refer to Fla. Stat. 626.989(1)(2009).

57.    ALLSTATE made false statements concerning material facts to WEDGEWOOD FOUNTAIN during the adjustment of the insurance claims:

A.    WEDGEWOOD FOUNTAIN'S damages were not covered under The Policy (see attached Exhibits "B, C, E, H, and K");

B.    "The insured has failed to provide prompt or timely notice to Allstate of its supplemental claim, which prejudiced Allstate, contrary to the express terms and conditions of the insurance policy." (See attached Exhibit "K").

C.    "A forensic inspection and evaluation of the claimed damage or condition of the roofs at Wedgewood Fountain reveals that the existing conditions of the roofs are not related to Hurricane Wilma or any windstorm event. . . . but are in fact related to age, normal wear, and the expected deterioration of the roof covering, and/or related to defects or deficiencies in the initial roof tile installation and/or deficiencies in the subsequent repairs to the roofs that pre-existed the windstorm in October 2005, or

19

made subsequent to October 2005. . . . [and] the forensic inspection and evaluation has indentified foot traffic on the roofs as the likely cause of broken or cracked roof tiles." (See attached Exhibit "K").

D. "The insurer's investigation has revealed that willful misrepresentations of material fact have been made in the reporting of the claim or in the claim inquiry by Allstate." (See attached Exhibit "K").

E. "The insured's failure to fully comply with post loss conditions of the insurance policy, including but not limited to failing to produce all reasonably requested documents and records in the claims inquiry by Allstate, failure to produce records or credible evidence relating the existing conditions of the roofs and buildings to a covered peril; and failing to take all reasonable steps to protect insured property from further damage (this includes but is not limited to not taking reasonable measures to address power washing of the roofs and adequate repairs to the buildings, which contributed to damage to roof tiles)." (See attached Exhibit "K").

F. ALLSTATE misrepresented to WEDGEWOOD FOUNTAIN that it had a contractual right to demand that WEDGEWOOD FOUNTAIN submit a Sworn Statement Proof of Loss even though that ALLSTATE had already tendered insurance benefits to WEDGEWOOD FOUNTAIN without demanding a Sworn Statement Proof of Loss.

G. ALLSTATE refused to provide its damage experts and/or adjusters' damage scopes and photographs taken on or about the time of the losses to WEDGEWOOD FOUNTAIN so as to concoct a fraudulent coverage defense; and

20

H.     ALLSTATE,   by   and   through   its   representatives   made misrepresentations to WEDGEWOOD FOUNTAIN as outlined herein.

58.     ALLSTATE   made   false   statements   concerning   material   facts   to WEDGEWOOD FOUNTAIN knowing that the representations it was making were false.

59.     ALLSTATE'S intent in making the false statements concerning material facts to WEDGEWOOD FOUNTAIN were to induce WEDGEWOOD FOUNTAIN to act on such false statements to its financial determinant.

60.     ALLSTATE made such false statements to WEDGEWOOD FOUNTAIN with the knowledge that they contained materially false information concerning facts material to the insurance claims and/or concealed, for the purpose of misleading WEDGEWOOD FOUNTAIN, information concerning material facts and owed benefits under The Policy.

61.     WEDGEWOOD FOUNTAIN sustained damages as a result of its reliance on the false misrepresentations.

62.     As a direct result of ALLSTATE'S insurance fraud, WEDGEWOOD FOUNTAIN was required to become obligated for attorney fees and costs in connection with the prosecution of this action, and Florida Statute §627.428 provides for the payment of attorney fees in the event of such need.

**WHEREFORE,** the Plaintiff, WEDGEWOOD FOUNTAIN, prays this Court enter an award against Defendant, ALLSTATE INSURANCE COMPANY, of compensatory damages, consequential damages, post judgment interest, pre-judgment interest, costs

of this action, attorney fees; and such other and further relief as this Court may deem just and proper.

Further, Plaintiff requests a trial by jury on all issues so triable.

**COUNT IV**
**BREACH OF CONTRACT**
**(BREACH OF OBLIGATION OF GOOD FAITH AND FAIR DEALING)**

63.     WEDGEWOOD FOUNTAIN re-alleges Paragraphs 1-25 as if fully set forth herein.

64.     In exchange for the premium paid by WEDGEWOOD FOUNTAIN, ALLSTATE contractually agreed to indemnify Plaintiff for any covered loss sustained to the insured property.

65.     In Florida, there is an obligation of good faith and fair dealing contained as a material term of the insurance contract and ALLSTATE assumed these duties.

66.     Pursuant to the terms and conditions of the Insurance Contract, WEDGEWOOD FOUNTAIN has a right to receive immediate and prompt recovery of insurance benefits owed.

67.     WEDGEWOOD FOUNTAIN also has the right to a fair and prompt investigation, payment, and/or settlement of its claim.

68.     ALLSTATE agrees it has an obligation of the utmost good faith and fair dealings to WEDGEWOOD FOUNTAIN which includes, but is not limited to the following:

A.     To honestly investigate and evaluate the facts and amount of loss pertaining to insurance claims looking for the true facts in a honest manner in order to obtain the fullest payment of benefits to its policy-holder as quickly as possible;

22

B.    To properly investigate coverage and promptly evaluate the loss and damage following receipt of the notice of the loss, and to fully, and at its own expense, investigate and evaluate all loss and damage following receipt of the notice of loss;

C.    To hire qualified and properly motivated claims managers, adjusters, investigators, claims personnel and attorneys to perform their duties and work in an honest and prompt manner, in compliance with all obligations and  duties consistent with those listed herein, with the understanding of "good faith," and to work for the benefit of its insured, WEDGEWOOD FOUNTAIN, rather than the financial interest of ALLSTATE, and rather than to lower claim payments or wrongfully deny benefits;

D.    To ensure that all undisputed amounts and benefits will be paid promptly;

E.    To ensure that WEDGEWOOD FOUNTAIN shall receive honest, full and prompt disclosure of the status of the claims investigation and evaluation; and

F.    To ensure that ALLSTATE'S investigation, evaluation and management staff of any policy-holder claim will not receive any compensation directly or indirectly tied to the amounts of payments or non-payments of claims.

69.    ALLSTATE breached its obligation of good faith and fair dealing by, among other things:

(a)    Failing to pay for the loss or damages to WEDGEWOOD FOUNTAIN'S property, which was caused by the windstorm and/or ensuing losses;

(b)    Failing to fairly and promptly investigate WEDGEWOOD FOUNTAIN'S property damage claim;

(c)    Failing to promptly and fairly pay WEDGEWOOD FOUNTAIN'S property damage claim;

23

(d)     Failing to fairly and promptly settle WEDGEWOOD FOUNTAIN'S property damage claim;

(e)     Failing to fairly and promptly adjust WEDGEWOOD FOUNTAIN'S property damage claim;

(f)     Otherwise failing to provide proper coverage and benefits for WEDGEWOOD FOUNTAIN'S property damage claim.

70.     As a direct result of ALLSTATE's breach of the insurance contract and obligation of good faith and fair dealing, WEDGEWOOD FOUNTAIN has lost the benefits of their insured property, and continue to suffer the loss.

71.     As a direct result of Defendants' breach of the insurance contract and obligation of good faith and fair dealing, WEDGEWOOD FOUNTAIN and its residents have lost the use of the insured property and sustained other and further financial damages.

72.     As a further direct result of ALLSTATE's breach of the insurance contract and obligation of good faith and fair dealing, WEDGEWOOD FOUNTAIN is obligated for attorney fees and costs in connection with the prosecution of this action, and Florida Statute §627.428 provides for the payment of attorney fees in the event of such need.

**WHEREFORE**, the Plaintiff, WEDGEWOOD FOUNTAIN, requests that this Court enter an award of damages, along with interest, costs of this action, attorney's fees and costs, and any other relief this court deems appropriate.

Further, Plaintiff requests a trial by jury on all issues so triable.

Dated: March 10, 2010.

**DAVID J. PETTINATO, ESQUIRE**
Florida Bar No. 062324
MERLIN LAW GROUP, P.A.
777 S. Harbour Island Boulevard
Tampa, FL  33602
813-229-1000
813-229-3692 fax
Email: DPettinato@merlinlawgroup.com
Attorney for Plaintiff